IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| JUDSON POST NO. 2059, VETERANS OF FOREIGN WARS, | § § § | |
| *Plaintiff,* | § § | SA-18-CV-00609-XR |
| vs. | § § | |
| PHILADELPHIA INDEMNITY INSURANCE COMPANY, | § § § § | |
| *Defendant.* | § § | |

## ORDER

Before the Court in the above-styled cause of action are Plaintiff's Opposed Motion for Sanctions and Motion to Disqualify Defendant's Attorney, William R. Pilat [#38] and Plaintiff's Opposed Motion to Compel Appraisal and to Abate Case Pending Appraisal Outcome [#40]. The motions were referred to the undersigned for disposition on July 23, 2019 and August 27, 2019, respectively. The Court held a hearing on the motions on September 3, 2019, at which counsel for both parties appeared before the Court. In resolving the motions, the Court has considered the parties' written filings [#41, #44, #46, #49, #51] and their arguments at the hearing. For the reasons set forth below, the Court will **deny** Plaintiff's motion for sanctions and **grant** Plaintiff's motion to compel appraisal.

## I. Background

This first-party insurance dispute arises out of storm damage to property owned by Plaintiff Judson Post No. 2059, Veterans of Foreign Wars located at 3202 Ackerman Road, Kirby, Texas 78219. Defendant Philadelphia Indemnity Insurance Company issued an insurance policy to Plaintiff covering the subject property. Plaintiff submitted a claim to Defendant against the policy for damage, and the claim was denied. Defendant disputes whether the damage

1

underlying the claim was preexisting or caused by the storm. Plaintiff sued Defendant in state court for breach of contract, violation of Sections 541 and 542 of the Texas Insurance Code, violation of the Deceptive Trade Practices Act ("DTPA"), and for breach of the duty of good faith and fair dealing. (Orig. Pet. [#1-3] at 4–21.) Plaintiff originally also sued two Texas-based Defendants (Elizabeth Ortiz and Paul R. White & Company, Inc.), but the state court dismissed Plaintiff's claims against these two parties with prejudice. (Dismissal Order [#1-3] at 80.) Defendant thereafter removed Plaintiff's Petition to federal court on June 20, 2018. (Notice of Removal [#1].) The Court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332(a). A scheduling order is in place to govern the course of this case, and the parties have been proceeding with discovery. Trial is set for June 15, 2020. (Am. Sched. Order [#36] at 4.)

Plaintiff has now moved for sanctions against Defendant's attorney William R. Pilat and has asked the Court to compel appraisal and abate this case pending the appraisal outcome pursuant to the appraisal provision in the insurance policy at issue. The Court addresses each motion in turn.

## II. Analysis

**A.    Sanctions Motion**

Plaintiff's motion for sanctions arises out of actions taken by Defense counsel William R. Pilat after he took depositions of Plaintiff's corporate representatives on May 21, 2019. The depositions took place at the property that is the subject of this lawsuit. Mr. Pilat admits that after the deposition concluded he took 14 photos with his iPhone of the interior of one of the rooms of Plaintiff's property. Defendant produced the photographs in discovery.

Plaintiff now asks the Court to sanction Mr. Pilat for failing to consult with Plaintiff's counsel before taking the photographs and failing to comply with the proper procedure set forth

2

in the Federal Rules for entering and photographing property. *See* Fed. R. Civ. P. 34(a)(2) (allowing a party to serve a request within the scope of Rule 26(b) "to permit entry onto designated land or other property possessed or controlled by the responding party, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it"). Plaintiff seeks attorney's fees for the costs associated with this motion and asks the Court to disqualify Mr. Pilat as counsel for Defendant, arguing that he is now a necessary witness in this case and therefore in violation of the Texas Disciplinary Rules of Professional Conduct. The Court orally denied the motion at the hearing and now memorializes its oral ruling with this written Order.

Federal courts have inherent power to sanction bad-faith conduct. *Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178, 1186 (2017); *Chambers v. NASCO, Inc.*, 501 U.S. 32, 46 (1991). "In order to impose sanctions against an attorney under its inherent power, a court must make a specific finding that the attorney acted in 'bad faith.'" *Chaves v. M/V Medina Star*, 47 F.3d 153, 156 (5th Cir. 1995) (internal quotation and citations omitted). Plaintiff has failed to demonstrate that Mr. Pilat acted in bad faith such that the imposition of sanctions in any form is warranted.

Moreover, there is no merit to Plaintiff's argument that Mr. Pilat should be subjected to the "severe remedy" of disqualification for his actions. *See In re Sanders*, 153 S.W.3d 54, 57 (Tex. 2004). A disqualification motion filed in federal court is governed by at least four separate ethical canons—the local rules of the district court in which the motion is brought (here the Western District of Texas), the American Bar Association ("ABA") Model Rules of Professional Conduct, the ABA Model Code of Professional Responsibility, and the rules of professional conduct employed by the bar of the state in which the court sits. *Crossroads Sys. (Tex.), Inc. v.*

*Dot Hill Sys. Corp.*, No. A-03-CA-754-SS, 2006 WL 1544621, at *9 (W.D. Tex. May 31, 2006). All of the governing rules contain some version of Texas Disciplinary Rule 3.08, which prohibits an attorney from continuing employment as an advocate if the lawyer "knows or believes that the lawyer is or may be a witness necessary to establish an essential fact on behalf of the lawyer's client." Tex. Disciplinary R. of Prof'l Conduct R. 3.08(a). *See also* ABA Model R. of Prof'l Conduct R. 3.7(a); ABA Model Code of Prof'l Responsibility DR 5-101(b). These rules exempt from disqualification testimony by an attorney-witness that relates to an "uncontested issue" or testimony that relates solely "to a matter of formality and there is no reason to believe that substantial evidence will be offered in opposition to the testimony." Tex. Disciplinary R. of Prof'l Conduct R. 3.08(a).

The acts of Mr. Pilat in taking these photographs do not make him a witness necessary to establish an essential contested fact in this case. He is therefore not subject to disqualification under any governing canon of professional responsibility. As stated on the record at the hearing, the parties are ordered to confer on the photographs and to either (1) agree that Mr. Pilat may stipulate to the authenticity of the photographs; or (2) if they cannot agree to such stipulation, to agree that the photographs are inadmissible in this case and the parties will follow the procedure set forth in Rule 34(a)(2) for obtaining replacement photographs as needed.

**B.     Appraisal Motion**

Plaintiff asks the Court to compel appraisal and abate this case during the appraisal process. The Court will grant the motion.

The insurance policy issued by Defendant to Plaintiff to insure the property at issue contains a standard appraisal clause, which provides as follows:

> Appraisal. If we and you disagree on the amount of loss, either may make
> written demand for an appraisal of the loss. In this event, each party will

> select a competent and impartial appraiser and notify the other of the appraiser selected within 20 days of such demand. The two appraisers will select and umpire. If they cannot agree within 15 days upon such umpire, either may request that selection be made by a judge of a court having jurisdiction. Each appraiser will state the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding as to the amount of loss. Each party will:
>
> a. Pay its chosen appraiser; and
> b. Bear the other expenses of the appraisal and umpire equally.
>
> If there is an appraisal:
>
> a. You will still retain your right to bring a legal action against us, subject to the provisions of the Legal Action against Us Commercial Property Condition; and
> b. We will still retain out right to deny the claim.

(Contract [#40-2] at 3.) Plaintiff made a written demand for appraisal to Defendant on June 19, 2019. (Appraisal Ltr. [#40-1] at 2.) Defendant refused to participate in appraisal, arguing that Plaintiff waited too long to invoke the appraisal remedy and that appraisal will not settle the primary dispute in this lawsuit—whether the storm caused the property damage identified by Plaintiff or whether the damage was preexisting. (Appraisal Resp. Ltr. [#46-1] at 2–3.)

"Appraisal is intended to take place before suit is filed" and before the costs of litigation are incurred by the parties. *State Farm Lloyds v. Johnson*, 290 S.W.3d 886, 894 (Tex. 2009). This is because "[a]ppraisals require no attorneys, no lawsuits, no pleadings, no subpoenas, and no hearings." *Id.* Accordingly, many of the benefits of appraisal are lost if a party is permitted to delay invoking the appraisal process. Nonetheless, where there is no time limitation on invoking appraisal in the policy terms, an appraisal clause may be invoked after the filing of a lawsuit, provided that the failure to invoke appraisal earlier does not amount to waiver of the clause. *Dwyer v. Fid. Nat. Prop. & Cas. Ins. Co.*, 565 F.3d 284, 287–88 (5th Cir. 2009); *see also In re Universal Underwriters of Tex. Ins. Co.*, 345 S.W.3d 404, 407 (Tex. 2011).

There is no time limit in the appraisal clause in the contract between the parties to this suit. Accordingly, to deny Plaintiff the opportunity to employ the appraisal process, Defendant (as the party opposing appraisal) bears the burden of establishing the clause is not enforceable due to (1) waiver by conduct of the party seeking appraisal and (2) prejudice to itself (the party claiming waiver of the appraisal clause). *Universal Underwriters,* 345 S.W.3d at 411; *see also In re State Farm Lloyds, Inc.*, 170 S.W.3d 629, 634 (Tex. App.—El Paso 2005, orig. proceeding).

Waiver is "the intentional relinquishment of a known right" and "can occur either expressly, through a clear repudiation of the right, or impliedly, through conduct." *G.T. Leach Builders, LLC v. Sapphire V.P., LP*, 458 S.W.3d 502, 511 (Tex. 2015). Implied waiver "is largely a matter of intent, and for . . . [it] to be found through a party's actions, intent must be clearly demonstrated by the surrounding facts and circumstances." *Jernigan v. Langley*, 111 S.W.3d 153, 156 (Tex. 2003) (citing *Motor Vehicle Bd. v. El Paso Indep. Auto. Dealers Ass'n*, 1 S.W.3d 108, 111 (Tex. 1999)). A court "may not infer a waiver of a right of appraisal, however, where neither explicit language nor conduct indicates that such was the party's intent." *In re Allstate Vehicle & Prop. Ins. Co.*, 549 S.W.3d 881, 888 (Tex. App.—Fort Worth, 2018, no pet.). "A waiver of rights under an appraisal provision by conduct occurs only when the party engages in intentional conduct inconsistent with claiming that right." *Id.*

"A party's unreasonable delay in invoking an appraisal clause is one aspect, or factor, of a waiver-by-conduct analysis." *Id.* (citing *Universal Underwriters*, 345 S.W.3d at 408 (stating that "unreasonable delay is a factor in finding waiver"). "Whether the party's delay in invoking an appraisal clause is reasonable or unreasonable depends on the time between the 'point of impasse' in the parties' negotiations concerning the amount of loss and the time the appraisal

clause is invoked." *Id.* (quoting *Universal Underwriters*, 345 S.W.3d at 408). "Point of impasse" is a "mutual understanding that neither party will negotiate further on the amount of loss." *See id.* (citing *Universal Underwriters*, 345 S.W.3d at 408–10). "An impasse is reached when it becomes apparent to both sides that they disagree as to the damages and that further negotiations are futile." *Id.*

The parties disagree as to what constituted the point of impasse in this case from which delay and waiver should be measured. Plaintiff contends that the point of impasse was June 18, 2019, the point at which Plaintiff believes settlement negotiations broke down between the parties and further negotiations were not possible. Defendant contends that the point of impasse was years earlier, when Defendant made its final payment on the claim in December 2016, prior to Plaintiff pursuing litigation.

The record in this case demonstrates the following timeline from which this Court must evaluate whether Plaintiff waived its right to invoke appraisal at this stage of the litigation. The storm that allegedly caused the damage in this case occurred on April 12, 2016. (Orig. Pet. [#1-3] at 7.) Plaintiff submitted a claim; an adjuster was assigned to the claim; and the adjuster visited the property on April 27, 2016 for inspection. (*Id.*) On September 20, 2016, there was a second inspection. (*Id.* at 8.) On October 6, 2016, Plaintiff received a letter regarding a proposed settlement of the claim and included a check made payable to Plaintiff from Defendant in the amount of $477.99. (*Id.* at 9.) Plaintiff, believing the settlement underpaid the claim, had independent estimates of the damage completed and sent the estimates to Defendant on June 14, 2017 and August 11, 2017. (*Id.* at 10.) Plaintiff sent Defendant pre-suit settlement demands under the DTPA and the Texas Insurance Code on August 17, 2017 and again on February 27, 2018. (Demand Ltrs. [#1-3] at 69–71, 73–76.) Defendant never responded to the new estimates

7

or the demands with any revised offer of settlement, which led Plaintiff to file this suit in state court on March 29, 2018. (Orig. Pet. [#1-3] at 4–21; Dismissal Order [#1-3] at 80.)

Defendant removed the Petition to this Court on June 20, 2018. (Notice of Removal [#1].) This lawsuit has been pending for approximately 17 months since its inception and approximately 14 months since removal. During the course of the litigation in this Court, the Court has not entered any substantive rulings. The parties have exchanged initial disclosures, engaged in some discovery, made their expert designations, and conducted several depositions. Trial was originally scheduled for August 2019, but the parties requested and received various continuances and trial is currently set for June 2020. (Scheduling Order [#36].)

In compliance with the Court's Scheduling Order, Plaintiff made a settlement offer to Defendant, and Defendant responded to the demand on April 2, 2019 with a revised estimate and offer. (Settlement Offer [#49-5] at 2–4.) Thereafter the parties engaged in several rounds of settlement discussions. On June 7, 2019, Plaintiff's counsel responded to Defendant with a counteroffer. (Counteroffer [#49-6] at 2.) Defendant countered that same day. (Counteroffer [#49-7] at 2.) On June 11, 2019, Plaintiff's counsel continued to negotiate with Defendant via email, and Defendant sent a counteroffer on June 12, 2019, saying he was "putting it all on the table." (Corresp. [#49-8] at 2; Corresp. [#49-9] at 2.) Then, on June 18, 2019, Plaintiff's counsel responded to Defendant's June 12, 2019 offer, asking if Defendant could go a bit higher so that Plaintiff's counsel could get a "good counteroffer" from his client. (Corresp. [#49-10] at 2.) Defendant responded with "new authority" for the previous counteroffer. (Corresp. [#49-1] at 2.) Plaintiff claims he interpreted Defendant's unwillingness to move any higher with his counteroffer as an inability to engage in further negotiations, meaning the parties had reached a

point of impasse. Plaintiff demanded appraisal the following day on June 19, 2019. (Appraisal Ltr. [#40-1] at 2.)

Although Defendant acknowledges the parties continued to negotiate settlement from April 2019 to June 2019, Defendant maintains that there is a distinction between settlement negotiations "as a lawsuit strategy" and negotiations "concerning the amount of loss." (Ltr. Brief [#51] at 1.) According to Defendant, settlement negotiations during litigation do not create a new point of impasse after which a party may invoke appraisal. Defendant directs the Court to *In re Allstate Vehicle*, 549 S.W.3d 881 and *Jai Bhole, Inc. v. Employers Fire Ins. Co.*, No. CIV.A. G-10-522, 2014 WL 50165 (S.D. Tex. Jan. 7, 2014) as support for its position. The Court does not find that either of these cases supports finding waiver here.

In *Allstate*, the court affirmed the trial court's denial of a motion to compel appraisal, concluding that there was no abuse of discretion in finding that Allstate—the party seeking appraisal—had waived its right to invoke appraisal because it had undertaken conduct inconsistent with that right. *In re Allstate*, 549 S.W.3d at 889. At the time Allstate moved to compel appraisal, it had already conducted at least six inspections of the property at issue, had removed the case to federal court, had unsuccessfully defended against a motion to remand, had taken the plaintiff's deposition, had conducted and closed discovery, had agreed to a trial setting, and most importantly had sought and obtained an order from the trial court compelling a seventh inspection of the plaintiff's property by a new expert who Allstate claimed it needed to prepare for the upcoming jury trial. *Id.* at 883–84. Four days after the seventh inspection, on August 14, 2017, Allstate made a settlement offer of $24,000 to the plaintiff to settle all her claims against Allstate. Plaintiff rejected the offer two days later. There was no further negotiation. The next day, Allstate made its appraisal demand. *Id.* at 885.

9

On these facts, the trial court concluded that Allstate had waived its right to appraisal because its conduct, particularly in seeking the seventh inspection through a motion to compel for the stated reason of preparing for an upcoming trial, was inconsistent with the appraisal remedy. *Id.* at 886. The appellate court agreed, rejecting Allstate's argument that its rejected settlement offer following the inspection created a new point of impasse concerning the amount of loss such that there was virtually no delay in invoking appraisal. *Id.* at 891. In doing so, the appellate court did not however reach the conclusion that settlement negotiations during litigation can *never* represent ongoing good-faith negotiations and can never result in a new point of impasse. In fact, the *Allstate* court identified the point of impasse in that case as being May 2017, when the plaintiff rejected Allstate's $4,000 offer and demanded—for the third time—the sum of $19,350.42. *Id.* at 890. At this point, Allstate was actively involved in litigation; the distinction was that the parties were also still contemplating settlement by exchanging offers and counteroffers to resolve the plaintiff's claims and Allstate had not yet moved to compel the seventh inspection, agreed to a trial date, and represented to the plaintiff and the court that it was proceeding to trial.

The posture of the *Allstate* case in May 2017 is analogous to the case at hand. As previously detailed, although this case has been pending for months, trial is not set for another nine months; discovery has not closed; and from April to June 2019 the parties were still exchanging offers and counteroffers. These facts stand in direct contrast to Allstate's isolated and rejected offer made in August 2017, months after the parties had stopped actively negotiating and were committed to proceeding to trial. Understandably, the Court construed Allstate's actions as an attempt to purposefully manipulate the appraisal process in order to gain

10

an unfair tactical advantage by avoiding trial after the seventh inspection of the property. *See id.* at 892.

The facts of the other case cited by Defendants are also distinguishable. In *Jai Bhole, Inc.*, the court denied a motion to compel appraisal on the basis of waiver because the parties had already engaged in multiple mediations and the defendants had filed multiple dispositive motions on the defense of accord and satisfaction, which were ultimately dismissed or denied on the merits. 2014 WL 50165, at *1. The court held that the point of impasse occurred when defendant decided to "stand on its accord and satisfaction defense rather than negotiate" not when a second mediation failed after the court had already denied defendants' motion for summary judgment. *Id.* at *2. The court viewed defendants' position as an attempt "to manipulate the facts in such a way as to create and take advantage of a second point of impasse to trigger its ability to demand an appraisal." *Id.*

Ultimately, a court's waiver analysis must focus on the specific conduct and intent of the party seeking appraisal to evaluate whether that party's conduct was inconsistent with claiming the right to invoke the appraisal process. *In re Universal Underwriters*, 345 S.W.3d at 407. "Although 'it is difficult to see how prejudice may be shown simply by a delay in requesting an appraisal after the point of impasse when an appraisal may be requested by either side,' prejudice may arise not only from the delay but also from the requesting party's intentional conduct in the meantime—like conduct triggering additional expenses, conduct constituting inherent unfairness, conduct constituting purposeful manipulation of the appraisal process, and conduct giving the party requesting appraisal an unfair tactical advantage.'" *In re Allstate Vehicle*, 549 S.W.3d at 892 (quoting *Universal Underwriters*, 345 S.W.3d at 411 (citing cases in the arbitration context finding prejudice where parties sought to manipulate the exercise of their arbitral rights at the

11

expense of the other party)).  No such conduct occurred here.  Rather, immediately prior to demanding appraisal, the parties were engaged in good-faith negotiations to settle Plaintiff's claim.  The Court is not persuaded that there is a critical distinction between negotiations based on what a defendant might perceive as the "nuisance value" of litigation (which takes into consideration attorney's fees and costs associated with proceeding to trial) versus negotiations based on what a defendant perceives as the actual amount of loss on the underlying insurance claim.

Nor is the Court persuaded by Defendant's argument that appraisal is inappropriate here because the primary disputed issue in this case is causation, not the amount of loss.  Just because the issue of loss might not be ultimately reached if Defendant prevails on its arguments with respect to causation, does not mean that the parties agree on the amount of the loss.  Both of these issues are disputed in this case.  If the parties already had agreed to the amount of loss and were willing to stipulate to that effect, and the only issue left in this case was causation, perhaps Defendant's argument would have merit.  However, this is not the argument put forth by Defendant, and therefore the Court will not deny appraisal on this basis.

In summary, Defendants have failed to satisfy their burden that Plaintiff has engaged in conduct amounting to waiver of its right to appraisal.[1]  Accordingly, the Court will grant Plaintiff's motion and abate this case during the appraisal process.

**IT IS THEREFORE ORDERED** that Plaintiff's Opposed Motion for Sanctions and Motion to Disqualify Defendant's Attorney, William R. Pilat [#38] is **DENIED**.

---

[1] Because the Court does not find that Defendant satisfied its burden to prove Plaintiff waived its right to appraisal, the Court need not consider the second prong of the analysis—whether Defendant would be prejudiced by an order for appraisal.  *See Universal Underwriters,* 345 S.W.3d at 411.

**IT IS FURTHER ORDERED** that Plaintiff's Opposed Motion to Compel Appraisal and to Abate Case Pending Appraisal Outcome [#40] is **GRANTED**.

**IT IS FURTHER ORDERED** that the parties shall comply with the procedures set forth in the appraisal provision of the policy.

**IT IS FINALLY ORDERED** that this case is **ABATED** during the appraisal. The parties shall notify this Court once the appraisal process has been completed and whether the stay should be lifted and this case should proceed on the Court's docket.

SIGNED this 9th day of September, 2019.

_____
ELIZABETH S. ("BETSY") CHESTNEY
UNITED STATES MAGISTRATE JUDGE